IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| PETER M. AND I.M., <br><br> Plaintiffs, <br><br> vs. <br><br> AETNA HEALTH AND LIFE INSURANCE COMPANY, and the NOMURA SECURITIES INTERNATIONAL, INC. WELFARE PLAN, <br><br> Defendants. | ORDER AND MEMORANDUM DECISION <br><br> Case No. 2:20-cv-00331-TC <br><br> Judge Tena Campbell |

In this Employee Retirement Income Security Act (ERISA) lawsuit, Plaintiffs Peter M. and I.M. and Defendants Aetna Health and Life Insurance Company (Aetna) and Nomura Securities International, Inc. Welfare Plan have filed cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the court GRANTS Defendants' motion (ECF No. 12) and DENIES Plaintiffs' motion (ECF No. 13).

**UNDISPUTED MATERIAL FACTS**

Peter is an employee of Nomura Securities International, Inc. (Nomura). He and I.M., his son, are beneficiaries of the Nomura Securities International Welfare Plan (the Plan), which is an employee welfare benefit plan subject to ERISA and the Mental Health Parity and Addiction Equity Act (MHPAEA). (Answer ¶¶ 2–5 (ECF No. 4).) Aetna is the third-party claims administrator for the Plan. (Id.)

1

When I.M. was fifteen years old, he received treatment at Aspiro Adventure Therapy (Aspiro) after struggling for several months with drug addiction, depressive disorder, and anorexia. (Administrative Record at AETNA000309–311 (ECF No. 16) [hereinafter "AR" and "309–311"].) I.M. stayed at Aspiro, which is located in Utah, from February 26 to May 10, 2017 (the "first visit"), and from June 9 to July 12, 2017 (the "second visit"). (Id. at 157–160, 181.)

Aspiro is licensed by the State of Utah as an outdoor youth treatment facility and is accredited by the Association for Experiential Education. (Id. at 337, 371.) Aspiro's website identifies it as "[t]he Wilderness Therapy Program where adventure heals struggling teens and young adults" and as "the pioneer of Wilderness Adventure Therapy offering short-term, intermediate treatment options for teenagers and young adults." Aspiro Home Page, https://aspiroadventure.com/ (last visited July 28, 2021). As part of their treatment program, students at Aspiro participate in various outdoor activities such as rock climbing, mountain biking, skiing, hiking or backpacking. They sleep in tents and three-sided permanent structures. See Day in the life, https://aspiroadventure.com/what-we-do/day-in-the-life/?playlist=36caf83&video=54c205c (last visited July 28, 2021).

On May 17, 2017, Plaintiffs submitted a claim to Aetna for payment for I.M.'s first visit to Aspiro. Aetna sent a letter to Plaintiffs on June 13, 2017, denying benefits for this service based on its conclusion that Aspiro is a wilderness treatment program, which is excluded from Plan coverage. (AR at 181.)

The Plan "pays benefits only for services and supplies described in [the Benefit] Booklet as covered expenses that are medically necessary." (Id. at 35.) The Plan has a "Medical Plan Exclusions" section that identifies a number of services that are not covered by the Plan, even if prescribed or recommended by a doctor. (See id. at 75.) For example, the Plan does not cover

dental services, experimental drugs, plastic surgery, and facility charges at assisted living facilities. (Id. at 75–82.) Included in the list of Plan exclusions are:

> Wilderness treatment programs (whether or not the program is part of a licensed residential treatment facility, or otherwise licensed institution), educational services, schooling or any such related or similar program, including therapeutic programs within a school setting.

(Id. at 82.)

In its letter to Plaintiffs, Aetna explained that it denied coverage for I.M.'s first visit to Aspiro because "[m]ental health residential treatment programs cannot be a wilderness treatment program." (Id. at 181.) This coverage denial was "based on the terms of the member's benefit plan document (such as the . . . benefit plan booklet)." (Id.)

On November 28, 2017, Peter submitted a level one appeal for I.M.'s first visit to Aspiro, arguing that Aetna's denial of services violated MHPAEA and requesting a copy of all documents under which the plan is operated, including any administrative services agreements and governing plan documents. (Id. at 319.) On January 4, 2018, Aetna upheld its denial and wrote that "ultimately it is your responsibility to ensure that you are aware of your benefits." (Id. at 388.)

Peter submitted a claim for benefits for I.M.'s second visit to Aspiro on November 21, 2017. On January 9, 2018, Aetna denied benefits for I.M.'s second visit on the same basis as its denial of I.M.'s first visit, explaining that wilderness treatment programs are not covered under the Plan (Id. at 157).

Peter submitted a level two appeal for I.M.'s first visit to Aspiro on February 16, 2018, in which he made the same arguments and requests for documents as his first appeal. (Id. at 387.) Aetna denied this appeal and upheld its earlier decision on April 5, 2018. (Id. at 492–94.)

Peter also submitted a level one appeal for I.M.'s second visit to Aspiro, reiterating the same arguments. (Id. at 653–57.) Aetna denied this level one appeal on March 24, 2018 (Id. at 854). On April 25, 2018, Aetna sent a letter titled "Final Appeal Decision" to Plaintiffs. (Id. at 866.) In this letter, Aetna upheld its denial of I.M.'s claims for his second visit to Aspiro after a second appeal from Peter. But curiously, Peter had not actually submitted a second level appeal for I.M.'s second visit to Aspiro.

On May 14, 2018, Aetna sent Peter a letter regarding the "Request for Relevant Documents," including relevant documents pertaining to the appeal. Aetna enclosed all of the documents relating to the two levels of appeal for I.M.'s first visit, the clinical records from Aspiro, and the relevant pages from the summary plan description. (Id. at 503). The letter explained, "[t]he relevant documents attached only include the information pertaining to the appeal. If you need a copy of the entire [summary plan description], you will need to request that directly from Nomura Securities International, Inc." (Id.)

Peter submitted a second level appeal for I.M.'s second visit to Aspiro on May 17, 2018. Defendants responded on May 29, 2018, asserting that "all appeal rights have been used." (Id. at 0877)

## LEGAL STANDARD

### I.   Summary Judgment Standard

In general, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But in an ERISA case where both parties have moved for summary judgment, "summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the

4

non-moving party is not entitled to the usual inferences in its favor." LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 796 (10th Cir. 2010).

### II.  Standard of Review for Denial of Benefits

A denial of benefits challenged under ERISA "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). It is undisputed that Aetna has the discretionary authority to make claims decisions based on the administrative services agreement between Aetna and Nomura. (See Defs.' Mot. for Summ. J. Ex. A at 9 (ECF No. 12-1).) For this reason, Defendants contend that a deferential arbitrary and capricious standard is appropriate. But Plaintiffs argue that the court should apply de novo review. According to Plaintiffs, Defendants have forfeited arbitrary and capricious review because their consideration of Plaintiffs' claims was marked by serious procedural errors.

Even when a plan gives an administrator discretionary authority, the administrator can lose the benefit of arbitrary and capricious review if it does not "valid[ly] exercise ... that discretion." Rasenack v. AIG Life Ins. Co., 585 F.3d 1311, 1315 (10th Cir. 2009) (quotations and citations omitted). The Tenth Circuit has "applied de novo review where deferential review would otherwise be required in the face of serious procedural irregularities." Martinez v. Plumbers & Pipefitters Nat. Pension Plan, 795 F.3d 1211, 1214 (10th Cir. 2015); see also LaAsmar, 605 F.3d at 798; Kellogg v. Metro. Life Ins. Co., 549 F.3d 818, 825–27 (10th Cir. 2008).

In Gilbertson v. Allied Signal Inc, the Tenth Circuit addressed the impact of procedural irregularities on judicial review. 328 F.3d 625 (10th Cir. 2003). The court applied the 1977 version of the ERISA regulations and concluded that, when a plan administrator fails to exercise its discretion—by neglecting to make a timely decision, for example—the claim is deemed denied and the district court owes no deference to the administrator. Id. at 630–31. But the court went on to explain that a plan administrator may be spared this rigorous standard if it "substantially complied" with the regulations. Id. at 634–35.

The ERISA regulations were amended in 2002, and the Tenth Circuit has not yet decided whether the promulgation of the new regulations (the "2002 regulations") affects its substantial compliance analysis under Gilbertson. Instead, the Tenth Circuit has repeatedly reserved that issue. See, e.g., LaAsmar, 605 F.3d at 800; Hancock v. Metro. Life Ins., 590 F.3d 1141, 1152 n.3 (10th Cir. 2009). Nevertheless, "in the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to de novo review." Rasenack ex rel. Tribolet v. AIG Life Ins. Co., 585 F.3d 1311, 1317 (10th Cir. 2009) (citing Gilbertson, 328 F.3d at 634). And although the Tenth Circuit has questioned the continued viability of the substantial compliance test, "it remains precedent to not apply a hair-trigger rule requiring de novo review whenever the plan administrator, vested with discretion, failed in any respect to comply with the procedures mandated by this regulation." J.L. v. Anthem Blue Cross, 510 F. Supp. 3d 1078, 1086 (D. Utah 2020), appeal dismissed (May 5, 2021) (quoting LaAsmar, 605 F.3d at 799) (internal quotation marks omitted).

Bound by this precedent, this court must determine whether Defendants substantially complied with ERISA's procedural regulations. Published by the Department of Labor, the 2002

6

regulations set forth the requirements for internal claims and appeals procedure. 29 C.F.R. § 2560.503-1(g)(1) describes the plan administrator's obligation to provide the claimant with sufficient notification of an adverse benefit determination. "The notification shall set forth, in a manner calculated to be understood by the claimant—

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
>
> (v) In the case of an adverse benefit determination by a group health plan—
>
>> (A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request."

29 C.F.R. § 2560.503-1(g)(1). Further, the 2002 regulations require plan administrators to provide claimants with "a reasonable opportunity to appeal an adverse benefit determination" through a process that must:

> (ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;
>
> (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other

7

> information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section;
>
> (iv) Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."

Id. § 2560.503-1(h)(2).

§ 2590.715-2719(b)(2)(ii)(F) explains when an internal claims and appeals process is deemed exhausted without the exercise of the plan administrator's discretion:

> (1) In the case of a plan or issuer that fails to strictly adhere to all the requirements of this paragraph (b)(2) with respect to a claim, the claimant is deemed to have exhausted the internal claims and appeals process of this paragraph (b), except as provided in paragraph (b)(2)(ii)(F)(2) of this section . . . If a claimant chooses to pursue remedies under section 502(a) of ERISA under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary.
>
> (2) Notwithstanding paragraph (b)(2)(ii)(F)(1) of this section, the internal claims and appeals process of this paragraph (b) will not be deemed exhausted based on de minimis violations that do not cause, and are not likely to cause, prejudice or harm to the claimant so long as the plan or issuer demonstrates that the violation was for good cause or due to matters beyond the control of the plan or issuer and that the violation occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant.

Id. § 2590.715-2719(b)(2)(ii)(F(1)–(2). In sum, these procedures require that the appeals process must represent "a meaningful dialogue between ERISA plan administrators and their beneficiaries." Gilbertson, 328 F.3d at 635 (citation omitted).

According to Plaintiffs, four procedural irregularities warrant de novo review. The first procedural problem identified by Plaintiffs is that Defendants denied I.M.'s claims for his second visit to Aspiro without giving him all of the internal appeals guaranteed to him by the Plan. Aetna admits that it mistook Plaintiffs' level two appeal for I.M.'s first visit as a level two appeal for I.M.' second visit. Although this was Aetna's mistake, it was inadvertent and had no negative consequences that prejudiced Plaintiffs. Both of I.M.'s visits to Aspiro were denied based on the

8

wilderness treatment exclusion, and the denials were upheld on appeal based on that same exclusion. It is unlikely that Aetna would have decided to pay for I.M.'s second visit to Aspiro upon review of Peter's level two appeal. Moreover, Aetna's error is a Plan violation, not a violation of ERISA claims procedure. Consequently, this mistake is not an adequate basis to forgo arbitrary and capricious review.

Plaintiffs next contend that Defendants did not take the information Plaintiffs submitted during their appeals into account and made no attempt to engage in a "meaningful dialogue" with Plaintiffs when they issued boilerplate denial letters with identical denial rationales. This argument is unpersuasive. Defendants denied Plaintiff's claims "after review of the information received, the specific circumstances of this member and the member's benefit plan." (AR at 157, 181.) In response to Plaintiffs' appeals, Aetna identified all of the information it reviewed, including the appeal, the claims submissions, authorizations, the original determination, the summary plan description, Aspiro's license, Utah's administrative code relating to Outdoor Youth Programs, and the final rules for MHPAEA. (AR at 374–78, 854–856.) Moreover, Aetna explained the specific reason for the adverse determinations and referred to the specific Plan provisions on which the denials were based. Although Aetna's letters were boilerplate, the court is not convinced there was much more for Aetna to say; Aetna repeatedly explained the Plan excludes treatment in a wilderness treatment program. Aetna also provided an opportunity for Plaintiffs to discuss the decision when it invited Plaintiffs to call Member Services with any additional questions. Aetna substantially complied with 29 C.F.R. § 2560.503-1(g)(1).

Finally, Plaintiffs argue that Defendants failed to provide copies of all documents, records, and other information relevant to their claims despite Plaintiffs' repeated requests that they do so. The record indicates Aetna provided Plaintiffs with some, but not all, of the

9

documents that Plaintiffs requested. (AR at 503.) For example, Plaintiffs never received a copy administrative services agreement between Aetna and Nomura. Still, the court does not see how this prejudiced Plaintiffs or represents a failure by Aetna to exercise discretion.

Altogether, the court finds that Defendants substantially complied with the applicable regulations. Moreover, pursuant to § 2590.715-2719(b)(2)(ii)(F)(2), the court finds that the procedural irregularities were de minimis and did not cause harm to Plaintiffs. Aetna exercised its discretion and engaged in a good faith exchange with Plaintiffs. Accordingly, arbitrary and capricious review is appropriate for Plaintiffs' § 1132(a)(1)(b) claim.

## ANALYSIS

Plaintiffs bring two causes of action under ERISA: a claim for recovery of benefits under § 1132(a)(1)(b) and a claim for equitable relief for a violation of MHPAEA under § 1132(a)(3). Plaintiffs cannot prevail on either claim.

### 1.  § 1132(a)(1)(b) Claim

§ 1132(a)(1)(b) allows a plan beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(b). When reviewing a plan administrator's decision to deny benefits in the Tenth Circuit, "we consider only the rationale asserted by the plan administrator in the administrative record and determine whether the decision, based on the asserted rationale, was arbitrary and capricious." Weber v. GE Group Life Assurance Co., 541 F.3d 1002, 1011 (10th Cir. 2008) (internal quotes omitted). That determination is made based on the language of the plan. Id.

First, the court must determine if the term "wilderness treatment programs" is ambiguous. Scruggs v. ExxonMobil Pension Plan, 585 F.3d 1356, 1362 (10th Cir. 2009). If it is, and Aetna

adopted one of two or more reasonable interpretations, then Aetna's decision to deny benefits based on that interpretation survives arbitrary and capricious review. Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180 (10th Cir.2007) (overruled on other grounds recognized by Holcolm v. Unum Life Ins. Co. Of America, 573 F.3d 1187 (10th Cir.1187)). On the other hand, if the language is unambiguous, and Aetna's interpretation differs from the unambiguous meaning, then Aetna's interpretation is unreasonable and the decision to deny benefits based on that interpretation is arbitrary and capricious. Scruggs, 585 F.2d at 1362–62 (quoting Flinders, 491 F.3d at 1193).

"Ambiguity exists where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." Id. The court is to "consider the common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." Weber, 541 F.3d at 1011 (emphasis in the original).

The Plan does not contain any definition of a "wilderness treatment program." The term could just as easily be applied to exclude search and rescue treatment in a wilderness setting as it could be applied to exclude a "Wilderness Adventure Therapy" program such as Aspiro. In a similar case, Michael D. v. Anthem Health Plans of Kentucky, Inc., the court found that the term "wilderness camps" was ambiguous because it was susceptible to multiple meanings. 369 F. Supp. 3d 1159, 1172–73 (D. Utah 2019), appeal dismissed sub nom. Michael D. v. Anthem Health Plans of Kentucky, No. 19-4033, 2019 WL 4316863 (10th Cir. Apr. 29, 2019). Although the phrase "wilderness treatment program" is narrower and more specific than the phrase "wilderness camp," "wilderness treatment program" still has multiple, equally valid definitions. Consequently, the court finds that the term "wilderness treatment program" is ambiguous.

When "a plan provision is ambiguous, under the arbitrary and capricious standard, then we 'take a hard look and determine' whether the plan administrator's interpretation of the ambiguous language was 'arbitrary.'" Scruggs, 585 F.3d at 1362. Under this deferential standard, the court asks, "whether the interpretation of the plan was reasonable and made in good faith." Weber, 541 F.3d at 1010 (citation omitted) (internal quotation marks omitted). The interpretation need not be the only logical one or even the best one. Hancock v. Metro. Life Ins., 590 F.3d 1141, 1155 (10th Cir. 2009). The court will not substitute its judgment for that of a plan administrator so long as the administrator's decision falls "somewhere on the continuum of reasonableness—even if on the low end." Cirulis v. UNUM Corp., 321 F.3d 1010, 1013 (10th Cir. 2003).

Defendants denied coverage for Plaintiffs' treatment as Aspiro because Defendants determined that Aspiro is an excluded wilderness treatment program. Plaintiffs maintain that Defendants incorrectly decided that Aspiro is a wilderness treatment program because Aspiro is licensed as an "outdoor youth treatment facility." And, in Plaintiffs' view, Defendants' use of the ambiguous phrase "wilderness treatment program" interfered with Plaintiffs' understanding about whether treatment at Aspiro would be excluded from Plan coverage.

Defendants' interpretation that Aspiro is a wilderness treatment program is entirely reasonable. Aspiro defines itself as a wilderness therapy program and as the pioneer of wilderness adventure therapy. At Aspiro, students receive mental health treatment in a wilderness setting. Moreover, the Tenth Circuit and other courts in this district have identified Aspiro as a "wilderness program," not as an "outdoor youth treatment facility." See Mary D. v. Anthem Blue Cross Blue Shield, 778 F. App'x 580, 584 (10th Cir. 2019) ("The Plan's terms specify that 'wilderness programs' like Aspiro 'are not considered residential-treatment

programs.'"); Peter E. v. United HealthCare Servs., Inc., No. 2:17-CV-00435, 2018 WL 6068107, at *1 (D. Utah Nov. 20, 2018) ("Plaintiffs seek to dismiss, without prejudice, their claims that relate to Eric E.'s treatment at the Aspiro wilderness program").

Although the Plan could certainly define wilderness treatment programs more explicitly, based on the language of the Plan, Defendants' reasonable interpretation that Aspiro is a wilderness treatment program survives arbitrary and capricious review. By the same token, Plaintiffs should have been reasonably apprised that treatment at Aspiro—which, again, refers to itself in large letters on its website homepage as a wilderness therapy program—was not a covered benefit.

Defendants' decision to deny coverage for I.M.'s first and second visits at Aspiro was not arbitrary and capricious and as a result, Defendants are not entitled to benefits under § 1132(a)(1)(b).

### 2. MHPAEA Claim

MHPAEA, codified at 29 U.S.C. § 1185a, is an amendment to ERISA that is enforced through equitable relief under § 1132(a)(3). Johnathan Z. v. Oxford Health Plans, No. 2:18-CV-383-JNP-PMW, 2020 WL 607896, at *12 (D. Utah Feb. 7, 2020). "Congress enacted the MHPAEA to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." Michael D., 369 F. Supp. 3d at 1174 (quoting Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 356 (2d Cir. 2016). "In effect, [MHPAEA] prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently." David S. v. United Healthcare Ins. Co., No. 2:18-CV-803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019); see also Munnelly v.

Fordham Univ. Faculty, 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018) ("[T]he Parity Act requires ERISA plans to treat sicknesses of the mind in the same way that they would a broken bone")).

MHPAEA's implementing regulations target and prohibit specific unequal "treatment limitations." 29 C.F.R. § 2590.712(a); see also 29 U.S.C. § 1185a(a)(3)(B)(iii) (defining "treatment limitations"). Treatment limitations include "both quantitative treatment limitations, which are expressed numerically (such as fifty outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a). Nonquantitative treatment limitations on mental health benefits include "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness, or based on whether the treatment is experimental or investigative" and "restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." Id. § 2590.712(c)(4)(ii)(A)–(H). A comparison of treatment limitations under MHPAEA must be between mental health/substance abuse and medical/surgical care "in the same classification"; the regulations list six classifications: (1) inpatient, in-network; (2) inpatient, out-of-network; (3) outpatient, in-network; (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. Id. §§ 2590.712(c)(4)(i), (2)(ii)(A).

To establish that Defendants violated MHPAEA, Plaintiffs must demonstrate that: (1) the Plan is subject to MHPAEA; (2) the Plan provides benefits for both mental health/substance abuse and medical/surgical treatments; (3) Defendants place differing limitations on benefits for mental health care as compared to medical/surgical care; and (4) the limitations on mental health care are more restrictive. Michael D., 369 F. Supp. 3d at 1174 (citing the framework laid out in

14

A.H. by & through G.H. v. Microsoft Corp. Welfare Plan, No. C17-1889-JCC, 2018 WL 2684387, at *6 (W.D. Wash. June 5, 2018)).

The parties do not dispute that the Plan is subject to MHPAEA and provides both mental health/substance abuse and medical/surgical benefits. But Plaintiffs argue that the Plan's categorical exclusion of wilderness treatment programs from mental health benefits places a nonquantitative limitation on in-patient, out-of-network mental health services that is not in parity with the limitations the Plan imposes on comparable in-patient, out-of-network medical/surgical services. In Plaintiffs' view, the Plan limits one type of mental health/substance abuse treatment (ostensibly based on its location in the wilderness) without placing the same location-based limitation on comparable medical/surgical treatment. Plaintiffs identify in-patient skilled nursing treatment and in-patient rehabilitation as comparable medical/surgical treatment—there is no "wilderness exclusion" applied to those services. This, to Plaintiffs, is a facial violation of MHPAEA. In contrast, Defendants argue that the Plan's wilderness treatment exclusion applies equally to both mental health/substance abuse treatment and medical/surgical treatment.

The court agrees with Defendants. The wilderness treatment exclusion is listed under the general heading for "Medical Plan Exclusions." The language of this section does not indicate that the exclusion only applies to mental health treatment. Rather, it applies to all wilderness treatment programs. Defendants have identified several types of medical/surgical wilderness treatment programs that are excluded under the Plan, including weight management programs, treatment for adolescent long-term childhood cancer survivors, diabetes treatment, and treatment of traumatic brain injuries. (See ECF No. 28 Ex. A ¶ 9); see also, e.g., Miek Jong, et. al.,

Mapping the concept, content and outcome of wilderness therapy for childhood cancer survivors: protocol for a scoping review, BMJ Open. 2019;9(8):e030544 (2019) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6731868/#.

Several other courts have dismissed MHPAEA claims that challenge a facially neutral wilderness treatment exclusion because the exclusion applies equally to mental health/substance abuse treatment and medical/surgical treatment. In A.H. by & through G.H. v. Microsoft Corp. Welfare Plan, the Western District of Washington found that a plan's general exclusion for "educational or recreational therapy or programs, including wilderness programs" used non-specific language which suggested that the exclusion applied to all medical benefits. No. C17-1889-JCC, 2018 WL 2684387, at *7 (W.D. Wash. June 5, 2018); see also Welp v. Cigna Health & Life Ins. Co., No. 17-80237-CIV, 2017 WL 3263138, slip op. at 5 (S.D. Fla. July 20, 2017). The court noted that wilderness programs and other recreational therapy "can be used to treat injuries and illnesses aside from mental health or substance abuse issues." A.H., 2018 WL 2684387, at *7.

In Michael D, this court raised concern that a blanket exclusion of wilderness "camps" from plan coverage might violate MHPAEA. 369 F. Supp. 3d at 1175. In that case, summary judgment was granted on other grounds, but the court explained that facially neutral wilderness camp exclusions "in practice. . . have only been applied to outdoor behavioral and mental health treatment programs, and thus the effect of the limitation is that it imposes a limit on mental health treatment that does not apply to medical or surgical treatment." Id. The court acknowledges that there are far more wilderness programs for mental health/substance abuse treatment than for medical/surgical treatment. But to the extent medical/surgical treatment does take place in a wilderness program—and based on Defendants' examples, this kind of treatment

does exist—the Plan excludes those programs on an equal basis as it does mental health/substance abuse wilderness treatment programs. There is no language in the Plan that indicates otherwise, nor do the Plaintiffs point to anything in the Plan or the administrative record that shows that the wilderness exclusion is only applied to mental health treatment.

In conclusion, the Plan does not violate MHPAEA.

## **CONCLUSION**

For the reasons set forth above, the court GRANTS Defendants' Motion for Summary Judgment (ECF No. 12) and DENIES Plaintiffs' Motion for Summary Judgment (ECF No. 13). Summary judgment is awarded in favor of Defendants Aetna Health and Life Insurance Company and Nomura Securities International, Inc. Welfare Plan.

DATED this 12th day of August, 2021.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge